UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NML CAPITAL, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-mc-0574 |
| | § | |
| EXCELERATE ENERGY, LLC, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Pending before the Court is NML Capital, Ltd.'s ("NML Capital") Renewed Motion to Compel and Brief in Support (Doc. No. 20). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the NML Capital's motion should be granted.

**I.    BACKGROUND**

NML Capital submits this renewed motion to compel information about liquefied natural gas ("LNG") that Excelerate allegedly delivers to the Republic of Argentina ("Argentina") through another company, YPF S.A. ("YPF").

NML is the owner of beneficial interests in bonds and notes issued by Argentina. (Decl. of José R. Almonte with Exs., Doc. No. 20-1, ¶¶ 2-3.) In December 2001, Argentina defaulted on these bonds. (*Id.*) NML Capital is the plaintiff in a total of eleven suits against Argentina before The Honorable Thomas P. Griesa of the Southern District of New York ("New York Court"). (*Id.* ¶ 2.) The New York Court has already entered final judgments in favor of NML Capital, and against Argentina, in five of the lawsuits. The judgments rendered total approximately $1.5 billion. (*Id.* ¶ 4.) The New

York Court has granted summary judgment against Argentina in three more suits, and will enter a final judgment. (*Id.* ¶ 5.) The remaining suits are still pending before the New York Court, but because they are similar to the other suits, NML Capital believes it will prevail in these cases as well. The total amount owed to NML Capital once judgments are rendered, by NML Capital's own estimation, will be approximately $2.3 billion. (*Id.* ¶¶ 6-7.)

In an effort to collect on its judgments against Argentina, NML served subpoenas (the "subpoenas") on Excelerate on July 1, 2008 and August 29, 2008, seeking information about LNG allegedly shipped by Excelerate to Argentina, through YPF. Excelerate responded to the subpoenas by producing select pages from a larger agreement between Excelerate and YPF entitled, "Charter Party and Liquefied Natural Gas Storage and Regasification Agreement," ("Charter") dated March 3, 2008. (Decl. of Michael McDermott With Exs., Doc. No. 1-1, Ex. 11.) NML Capital alleges that the "overarching purpose" of the Charter is to "facilitate the delivery of LNG to Argentina." (Doc. No. at, at 4.)

On November 19, 2008, NML Capital moved to compel Excelerate to comply with the subpoenas. (Doc. No. 1). On March 6, 2009, this Court issued an order denying NML Capital's original motion to compel. (Doc. No. 19.) The Court advised NML Capital to seek discovery from YPF Repsol directly. NML now returns to the Court with its renewed motion to compel, advising that YPF Repsol was unable to provide it with the information it needs.

Neither YPF, an Argentine company, nor Repsol YPF, a Spanish company, is subject to the subpoena power of domestic courts. Thus, NML Capital, pursuant to this

Court's previous order, served subpoenas on affiliates of YPF and Repsol YPF within the United States that NML Capital believed could be in the LNG business.  On April 27, 2009, NML served subpoenas on four YPF companies herein referred to herein as the "YPF Entities."   NML also served subpoenas on four Repsol companies referred to herein as the "Repsol Entities."  (Doc. No. 20-1, Ex. A.)  Both the Repsol and YPF Entities responded that they had no information responsive to the subpoenas.  (*Id.* Exs. B-C.)   The Repsol entities responded that they had "not been engaged, directly or indirectly[,] in the business of producing, marketing or transporting [LNG] to or for the Republic of Argentina at any time."  (*Id.*)   Similarly, the YPF Entities represented to NML Capital that they did "not engage in any business relating to [LNG] or its products, and have not done so during . . . the relevant time period."  (*Id.*)

Having failed to elicit the relevant information from the YPF or Repsol Entities as ordered by this Court, NML Capital now files this renewed motion to compel, seeking to obtain documents from Excelerate regarding LNG transported to Argentina.  The Court held a hearing on the matter and agreed to review the relevant documents in camera.

II.     ANALYSIS

NML Capital argues that it is entitled to the discovery it seeks for several reasons.  First, it proffers that judgment creditors may "'obtain discovery from any person," including nonparties.  (Doc. No. 20, at 6) (quoting Fed. R. Civ. P. 69(a)(2)).  Next, NML Capital contends that Excelerate has "important information" concerning Argentina's ownership interest in LNG, which NML Capital may be able to use to attach that asset and satisfy part or all of its judgment against Argentina.  Third, NML Capital argues that it is not seeking confidential or proprietary information from Excelerate, such as the

3

details of the liquification, stabilization, shipment, and regasification of natural gas.  To the extent that such information is produced, NML Capital asserts that this Court may enter a protective order to ensure that such information is not made public.  Fourth, it contends that the lack of a direct relationship between Excelerate and Argentina should not bear on its discovery request.  Fifth, NML Capital argues that the Foreign Sovereign Immunities Act ("FSIA"), Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended in scattered sections of 28 U.S.C.) does not protect Excelerate from discovery because Argentina has waived any claim of sovereign immunity and because the New York Court has retained jurisdiction over Argentina.  NML Capital argues last that Excelerate waived its objections to the subpoenas by failing to serve written objections within the appropriate time period.

Excelerate opposes the production of its communications relating to LNG, arguing mainly that such information constitutes confidential and proprietary information and, as a non-party to the litigation, it should not be compelled to put this information at risk by producing it to a party with whom it has no relation.  Excelerate also sets forth a lengthy argument regarding the proprietary of NML Capital's ultimate stated goal of attaching LNG to satisfy a judgment, given the strict limitations in the FSIA regarding execution against a sovereign nation's property located in the United States.

Rule 69(a)(2) provides that, "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a)(2).  Rule 69(a)(2) "imposes a liberal

standard." *T-M Vacuum Prods., Inc. v. Taisc, Inc.*, 2008 WL 5082413, at *1 (S.D. Tex. Nov. 25, 2008).

> The purpose of discovery under Rule 69(a)(2) is to allow the judgment creditor to identify assets from which the judgment may be satisfied and consequently, the judgment creditor should be permitted to conduct a broad inquiry to uncover any hidden or concealed assets of the judgment debtor. The discovery must be relevant to that purpose, however, and may not be used in order to harass the judgment debtor or any third parties.

*Id.* (quoting 13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE—CIVIL § 69.04 (2008)); *see also* 12 Charles A. Wright et al., Federal Practice & Procedure § 3014 (2d ed. 1990) ("The scope of examination is very broad, as it must be if the procedure is to be of any value.") (internal citations omitted); *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) ("The scope of postjudgment discovery is very broad . . . .").

Given this liberal standard, the Court cannot say that Excelerate's documents are so atypical that they ought to be spared Rule 69(a)(2)'s broad sweep. After reviewing the documents, the Court concludes that they should be produced to NML Capital. The Court understands and respects Excelerate's concern regarding the production of its documents. Accordingly, it orders that the parties confer and submit a proposed protective order to this Court for all documents produced pursuant to the subpoenas. The proposed order shall be submitted to the Court within thirty (30) days of the date of this Order. In the event that the parties cannot agree on a suitable protective order, they shall advise the Court and the Court will set a hearing. However, the parties should be advised that the Court believes the protective order should be as stringent as necessary to protect Excelerate's proprietary information, and the Court will afford Excelerate great latitude in determining what is necessary to protect its own interests.

In addition, NML Capital shall pay all costs and attorneys' fees associated with producing the relevant documents.

NML Capital, Ltd.'s ("NML Capital") Renewed Motion to Compel and Brief in Support (Doc. No. 20) is **GRANTED**. The parties shall submit a proposed protective order within thirty (30) days of the date of this Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 9th day of August, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**